IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (484) 274-9937, THAT IS STORED AT PREMISES CONTROLLED BY AT&T CORPORATION | Magistrate No. 22-mj-392 <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Eddie Garcia II, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make the affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (484) 274-9937 ("the Target Cell Phone"), subscribed to by Mahmoud Ali Ahm Rashwan ("Rashwan"), whose service provider is AT&T Corporation a wireless telephone service provider headquartered at AT&T Corporation, 11760 U.S. Highway 1, North Palm Beach, FL 33408. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3131-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

1

3. I am a Special Agent with the Federal Bureau of Investigation. I have been employed by the FBI since March 6, 2016, and, as such, I am a federal law enforcement officer within the meaning of Fed. R. Crim. P. 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request such a warrant. I am currently assigned to the Allentown Resident Agency of the Philadelphia Division. Prior to joining the FBI, I was employed as an Immigration Enforcement Agent and Deportation Officer with the Department of Homeland Security from January 2007 to March 2016. As a Special Agent, I have received instruction and on the job training in various aspects of law enforcement. During my employment with the FBI, I have participated in investigations involving international and domestic terrorism, bank robberies, drug trafficking, financial institution fraud, human trafficking, and other federal violations. In the course of those investigations, I have conducted consensual body recordings, employed the use of electronic surveillance techniques, have executed numerous search and arrest warrants, conducted physical and electronic surveillance, utilized information from cellular service providers, including historical cell site and location information, and secured other relevant information utilizing additional investigative techniques.

4. The facts in the affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. The affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about the matter.

5. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court

of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

6. Title 18, United States Code, Section 922(g)((5) states: "it shall be unlawful for any person…who, being an alien (A) is illegally or unlawfully in the United States; or (B) has been admitted to the United States under a nonimmigrant visa … to possess in or affecting commerce, any firearm or ammunition.

7. Title 18, United States Code, Section 924(a)(1)(A) makes it a crime for any individual to knowingly make any false statement or representation with respect to information required to be kept in the records of a federal firearms licensee. A Firearms Transaction Record, Form 4473, is information that is required to be kept in the records of a federal firearms licensee.

## PROBABLE CAUSE

8. Immigration documents show that on December 3, 2017, Rashwan was issued a Type B1/B2 Visa, NIV (Non-Immigrant Visa) # M718345, in Cairo, with an expiration date of November 28, 2022. This Visa permitted Rashwan to enter the United States but limited his stay to a period of six month increments within that time period. On February 4, 2018, Rashwan was admitted to the United States as a B-2 Visitor which allowed him to remain in the United States until August 3, 2018. Rashwan traveled to the United States on an Egyptian passport that was issued on July 25, 2016, with an expiration date of July 24, 2023. Rashwan's passport identifies him as an Egyptian national.

9. On August 23, 2018, Rashwan completed an application an Application for Asylum and Withholding of Removal, which was stamped as received by the Department of Homeland Security, U.S. Citizenship and Immigration Services, on August 27, 2018. On October 22, 2018, Rashwan interviewed by an Asylum Officer, and on October 30, 2018, the

Asylum Officer denied Rashwan's Application for Asylum and Withholding of Removal and referred his denial to an Immigration Judge.

      10.     On November 2, 2018, the Department of Homeland Security issued a Form I-862, Notice to Appear in removal proceedings under section 240 of the Immigration and Nationality Act, also known as the "charging document."  Rashwan's address on the Notice to Appear was 2391 Fernor Street, Apt. B-18, Allentown, PA 18103, and his area code and phone number was 484-274-9937.  The Notice to Appear states that Rashwan had been admitted to the United States, but was removable for the following reasons alleged by the Department of Homeland Security:  (1) he was not a citizen or national of the United States; (2) he was a native of Egypt and a citizen of Egypt; (3) he was admitted to the United States at Charlotte, NC on or about February 4, 2018, as a nonimmigrant B-2 with authorization to remain in the United States for a temporary period not to exceed August 3, 2018; and (4) he remained in the United States beyond August 3, 2018, without authorization from the Immigration and Naturalization Service or its successor the Department of Homeland Security.  The Notice to Appear states that "[o]n the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:  Section 237(a)(1)(b) of the Immigration and Nationality Act (Act), as amended, in that after admission as a nonimmigrant under Section 101(a)(15) of the Act, you have remained in the United States for a time longer than permitted."  The Notice to Appear requires Rashwan to appear before an immigration judge of the United States Department of Justice at 900 Market Street, Philadelphia, PA  19107, on November 28, 2018, at 9:30, to show why he should not be removed from the United States.  On November 5, 2018, Rashwan signed a Certificate of Service indicating that he was personally served with the

Notice to Appear. The Removal Hearing date was subsequently postponed from November 28, 2018, until April 10, 2019.

  11. Accompanying the Notice to Appear, and dated November 5, 2018, was a Referral Notice informing Rashwan that the U.S. Citizenship and Immigration Services ("USCIS") denied his application for asylum after a finding that his claim was not credible. Rashwan was informed that his asylum application was referred to an immigration judge for adjudication in removal proceedings. The letter said that "this is not a denial of your asylum application," and that the immigration judge would evaluate his asylum claim independently and was not required to rely on or follow the decision made by USCIS. The Referral Notice also informed Rashwan that because he was in removal proceedings, he must notify the Immigration Court within five days of any change of address, and that he was subject to a 150-day waiting period before he could apply for employment authorization, and an additional 30 days before employment authorization could be approved, for a total of 180 days. Because less than 150 days had elapsed since Rashwan first filed his asylum application, the Referral Notice stated that he was not eligible to apply for employment authorization until January 24, 2019.

  12. On April 10, 2019, the Department of Homeland Security issued a Notice of Hearing in Removal Proceedings to Rashwan, 2931 Fernor Street, Apt. B18, Allentown, PA 18103, to appear before the Immigration Court, 900 Market Street, Suite 504, Philadelphia, PA 19107, for a Master/Individual Hearing on May 24, 2022, at 9:00 a.m. The Certificate of Service attached to the Notice indicates that Rashwan was personally served with the Notice on April 10, 2019.

  13. On June 20, 2019, Rashwan completed an Application for Employment Authorization. In that Application, Rashwan stated that his immigration status when he arrived

in the United States was as a B-2 visitor. He indicated that his current immigration status was as a B-2 overstay.

14. On July 17, 2019, Rashwan was issued an Employment Authorization Card which was valid until July 16, 2021. The card states, "NOT VALID FOR RENTRY TO THE UNITED STATES."

15. On February 25, 2021, Rashwan completed another Application for Employment Authorization. In that Application, Rashwan stated that his immigration status was as a B-2 visitor, and that his current immigration status was "No Status."

16. Beginning on approximately February 14, 2021, Rashwan began frequenting the Heritage Guild of Easton Firing Range (Heritage Guild), located in Easton, PA. A receipt obtained from Heritage Guild shows that on May 30, 2021, at 1:30:22 p.m.,,Rashwan purchased ammunition, range rental time, ear and eye protective gear rental, and firearm rental, for $105.46 that was charged to his debit card. On June 2, 2021, at 2:03:05 p.m., a receipt from Heritage Guild of Easton shows that Rashwan charged a firearm rental, range time, ammunition, and ear and eye protective gear hear to his debit card in the amount of $65.98. On June 25, 2021, at approximately 1:24:49 p.m., a receipt from Heritage Guild of Easton shows that Rashwan charged firearm rental, range time, ammunition, and ear and eye protective gear, for a total amount of $67.04, which Rashwan charged to his debit card.

17. A receipt obtained from Heritage Guild of Easton, dated February 14, 2022, 1:53:12 p.m., shows three firearm rentals, and one long gun rental, ear and eye protection gear rental, a Valentine's Day target, and ammunition, for a total amount of $200.57. A separate receipt on February 14, 2022, 3:07:34 p.m., shows an ammunition purchase in which Rashwan exchanged one type of ammunition for another, for a 0.00 transaction. Another receipt on

February 14, 2022, at 3:27:55 p.m., shows that Rashwan purchased additional ammunition for $9.80, after applying a $1.85 gift credit. These transactions were all paid from Rashwan's debit card.

       18.     On February 26, 2022, Rashwan completed a Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Transaction Record, Form 4473, to complete the purchase of a Ruger, Model AR556, Serial Number 83996627, rifle, caliber 556, at a gun show in Allentown, PA. Rashwan sought to purchase the firearm from a Federal Firearms Licensee ("FFL") that was selling guns at the show. Rashwan stated on the Form 4473 that his place of birth was Egypt, that the United States of America was his country of citizenship. He did not state on the form that he was a citizen of Egypt. He also stated that he was not illegally or unlawfully in the United States, and that he was not an alien who had been admitted to the United States under a nonimmigrant visa. He certified that his answers were true, correct, and complete. He signed the Form 4473 on February 26, 2022, after the certification above the signature line, in which Rashwan certified that he understands that a person who answers "yes" to 21.1.1, which asks if you are an alien who has been admitted to the United States under a nonimmigrant visa, is prohibited from receiving or possessing a firearm. The certification further stated that making any false oral or written statement or exhibiting any false or misrepresented identification with respect to the transaction, is a crime punishable as a felony under Federal law. On February 26, 2022, the FFL submitted the Form 4473 to the NICS (National Instant Background Check System) or the appropriate state agency to complete the background check on Rashwan regarding the purchase of the Ruger, Model AR556, Serial Number 83996627, rifle, caliber 556. Although the FFL had not yet heard from NICS or the appropriate state agency denying

Rashwan's attempt to purchase the firearm, on February 28, 2022, the FFL indicated on the Form 4473 that the transaction was cancelled.

19. Based on Rashwan's answers on the Form 4473, I submit that probable cause exists to believe that Rashwan knowingly provided false information by answering on the Form 4473 that he was a United States citizen and that he was not an alien who had been admitted to the United States under a nonimmigrant visa, in violation of Title 18, United States Code, Section 924(a)(1)(a). I further submit that Rashwan, being unlawfully or illegal in the United States due to his overstay of his B-2 visa as set forth in the Notice to Appear served upon him on November 5, 2018, and having been admitted to the United States under a nonimmigrant visa, was prohibited from possessing a firearm, and that his attempt to do so violated Title 18, United States Code, Section 922(g)(5)(A) & (B).

20. In my training and experience, I have learned that AT&T Corp., is a company that provides cellular telephone access to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or "cell tower/sector records." E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles

apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21. Based on my training and experience, I know that AT&T Corporation can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Corporation's network or with such other reference points as may be reasonably available.

22. Based on my training and experience, I know that AT&T Corporation can collect cell-site data about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T Corporation typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

24. I further request that the Court direct AT&T Corporation to disclose to the government any information described in Attachment B that is within its possession, custody, or

control. I also request that the Court direct AT&T Corporation to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with AT&T Corporation's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Corporation's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T Corporation for reasonable expenses incurred in furnishing such facilities or assistance.

25. I further request that the Court authorize the execution of the warrant at any time of day or night, owing to the potential need to located the Target Cell Phone outside of daytime hours.

26. Under 18 U.S.C. §§ 2703(b)(1)(A) and 2703(c)(3), the government does not have to notify the subscriber when it obtains a search warrant.

27.    I further request that the Court order that all papers in support of the application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

*/s/ Eddie Garcia II*
Eddie Garcia II
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____ March 9, 2022

\_\_/s/ PAMELA A. CARLOS_____
HONORABLE PAMELA A. CARLOS
UNITED STATES MAGISTRATE JUDGE

## CERTIFICATION

Mary A. Futcher hereby certifies under penalty of perjury that:

I am an Assistant United States Attorney;

I incorporate the facts set forth in the Affidavit of Special Agent Eddie Garcia II by reference;

I hereby certify that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation.

/s/ *Mary A. Futcher*
MARY A. FUTCHER
Assistant United States Attorney

**ATTACHMENT A**

**Property to Be Searched**

The warrant applies to records and information associated with the cellular telephone assigned call number (484) 274-9937 ("the Target Cell Phone"), including information about the location of the Target Cell Phone, that are, or will be, within the possession, custody, or control of, or that are, or will be, stored at premises controlled by AT&T Corporation headquartered at the AT&T Global Legal Demand Center, AT&T Corporation, 11760 U.S. Highway 1, North Palm Beach, FL 33408 ("the Account").

## ATTACHMENT B

### Particular Things to be Seized

I.     **Information to be Disclosed by AT&T Corporation**

    To the extent that the information described in Attachment A is within the possession, custody, or control of AT&T Corporation including any information that has been deleted, but is still available to AT&T Corporation or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), AT&T Corporation is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.     All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, for the time period beginning 60 days prior to the date of the order and continuing until the date of the order, including:

        i.     the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records)), e-mail addresses, and IP addresses);

        ii.     upon the request of the agent, subscriber information for the Target Cell Phone, for all numbers called by the Target Cell Phone, and for all numbers calling the Target Cell Phone;

        iii.     information regarding the cell towers and sectors, including physical location, through which the communications were sent and received; and

        iv.     information regarding the physical location of the Target Cell Phone, including but not limited to data indicating the specific latitude and longitude of the Target Cell Phone, such as enhanced 911 (E-911), mobile locator tool, ping, or any other cellular network provider specific/proprietary name for location-based service, such as per call measurement data (PCMD), range to tower (RTT), or Network Event Location System (NELOS).

    b.     AT&T Corporation shall also produce the information listed in paragraphs a. i, a. ii, and a. iii., above, in an ongoing, real-time fashion for a period of thirty (30) days, at any time of the day or night.

    c.     AT&T Corporation shall also produce all information about the location of the Target Cell Phone for a period of thirty (30) days, during all times of day and night. "Information about the location of the Target Cell Phone includes all available E-911 Phase II

data, GPS data, latitude-longitude data, other precise location information, and any other cellular network provider specific/proprietary name for location-based service, such as per call measurement data (PCMD), range to tower (RTT), or Network Event Location System (NELOS) ("Location Information"). To the extent that the Location Information is within the possession, custody, or control of AT&T Corporation, AT&T Corporation is required to disclose the Location Information to the government. In addition, AT&T Corporation, must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T Corporation's services, including by initiating a signal to determine the location of the Target Cell Phone on AT&T Corporation's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T Corporation for reasonable expenses incurred in furnishing such facilities or assistance. The warrant does not authorize the seizure of any tangible property. In approving the warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

      d.      The thirty (30) days referred to in paragraphs b. and c. above is measured from the day on which AT&T Corporation first begins to provide information under the order or ten (10) days after the order is entered, whichever is earlier.

      e.      The order shall apply on any changed telephone number(s) subsequently assigned to an instrument bearing the same ESN, IMSI, or SIM as the Target Cell Phone, or any changed ESN, IMSI, or SIM subsequently assigned to the same telephone number as the Target Cell Phone, or any additional changed telephone number(s) and/or ESN(s), IMSI(s), or SIM(s), whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the Target Cell Phone within the thirty (30) day period authorized by the order.

**II.**    **Information to be Seized by the Government**

      All information described above in Section I that is relevant and material to locating a subject. Such information includes leads relating to: (1) the names of suspected criminal associates who assist the subject in purchasing/possessing a firearm; (2) the pattern of the subject's movements; and (3) the identity of a subject's usual locations, including houses where the subject may hide.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws
*Name*
of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in the certification is true and correct. I am employed by _____
*Entity*
(hereinafter "the entity"), and my title is _____. I am qualified
*Title*
to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of the provider. The attached records consist of _____. I further state that:
*Generally describe records (pages/CDs or DVDs/megabytes)*

a. all records attached to the certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of the entity, and they were made by the entity as a regular practice; and

b. such records were generated by the entity's electronic process or system that produces an accurate result; and

c. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of the entity in a manner to ensure that they are true duplicates of the original records.

I further state that the certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                                              Signature